Bradford, Judge,
concurs in part, and dissents in part with opinion.
I concur with the majority’s affir-mance- of the juvenile court’s denial of B.T.E.’s motion to dismiss and the true finding that B.T.E. committed conspiracy to commit aggravated battery. I cannot agree, however, that the State failed to produce sufficient evidence to support the juvenile court’s conclusion that B.T.E. committed what would be Level 3 attempted aggravated battery if committed by an adult. In my view, the record contains sufficient evidence to sustain a finding that B.T.E. took a substantial step toward committing aggravated battery. Consequently, I respectfully dissent from the majority’s disposition of this issue.
Pursuant to Indiana Code subsection 86-41-6-l(a),
[a] person attempts to commit a crime when, acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime. An attempt' to commit a crime is a felony or misdemeanor of the same level or class as the crime attemptéd.
As the Indiana Supreme Court has noted, “[a] statute of this type makes possible some preventive action by police and courts to stop the criminal effort at an earlier stage, thereby minimizing the risk of substantive harm without providing immunity for the offender.” Zickefoose v. State, 270 Ind. 618, 622, 388 N.E.2d 507, 509 (1979). Indiana’s general attempt statute was modeled after Section 5.01 of the American Law Institute’s Model Penal Code, and Indiana appellate courts have consistently looked to the section’s provi *283 sions for guidance. See, e.g.., Zickefoose, 270 Ind. at 622, 388 N.E.2d at 509 (“The statute is drawn substantially from section 5.01 of the American Law Institute’s Model Penal Code .(Proposed Official Draft 1962) and covers an area that had been treated only sparsely by prior Indiana case law.”);, see also Collier, 846 N.E.2d at 346 (“Indiana’s general attempt statute is based on the Model Penal Code approach to attempt liability.”).
Section 5.01 provides, in part, as follows:
(1) Definition of Attempt. A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission, of the crime, he:
[[Image here]]
(c)purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. ■ ‘ ■
(2) Conduct That May Be Held Substantial Step Under Subsection (l)(c). Conduct shall not be held to constitute a substantial step under' Subsection (10(c) of this Section unless it is strongly corroborative of the actor’s criminal purpose. Without negativing the sufficiency of other conduct, the'following, if strongly corroborative of the actor’s criminal purpose, shall not be held insufficient as a matter of law:
(a) lying in wait, searching for or following the .contemplated victim of the crime;
(b) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission;
(c) reconnoitering the, place • contemplated for the commission of the crime;
(d) unlawful entry of a. structure, vehicle or enclosure in which it is contemplated that the crime will be committed;
(e) possession of materials to be employed in the commission of the crime, that are specially designed for such unlawful use or that can serve no lawful purpose of.,the actor under the circumstances;
(f) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, if such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances;
(g) soliciting an innocent agent to engage in conduct constituting an element of the crime.
“To establish an attempt, the State must prove that the defendant acted with the culpability required, and that the defendant engaged in conduct constituting a substantial step' toward commission of the crime.” Minter v. State, 653 N.E.2d 1382, 1383 (Ind. 1995). B.T.E. contends, and the majority agrees,- that the State failed to produce sufficient evidence to establish a substantial step in a course of conduct to culminate in aggravated battery. “What constitutes a substantial step must be determined from all the circumstances of each case, and the conduct must be strongly corroborative of the firmness of the defendant’s criminal intent.” Zickefoose, 270 Ind. at 622-23, 388 N.E.2d at 510. “The substantial step element of attempt requires proof of any overt act beyond mere preparation and in furtherance of the intent to commit the crime.” Jackson v. State, 683 N.E.2d 560, 566 (Ind. 1997). “Whether .a substantial step has occurred *284 is a question of fact, to be decided by the jury, based on the particular circumstances of each case.” State v. Lewis, 429 N.E.2d 1110, 1116 (Ind. 1981).
In my view, given B.T.E.’s voluminous communications regarding his desire to kill J.R., there can be little doubt that there is ample evidence to support a conclusion that he intended to do him harm. The only real question, then, is whether B:T.E. acted in a way strongly corroborative of that criminal intent. I start, as Judge Barnes did in his dissent in Collier, with the principle that the determination of what constitutes a substantial step is for the fact-finder, in this case the juvenile court. The juvenile court specifically identified B.T.E.’s preparation of maps (uncovered during a search of his home) of (1) a certain classroom at Seymour High School with J.R.’s seat marked and (2) the 300 building of Seymour High School. The preparation of maps of the anticipated scene of the Columbine-style attack on J.R. are “overt acts” that, moreover, indicate that B.T.E. also acted overtly in evaluating the scene. This conduct clearly qualifies as “reconnoitering the place contemplated for the commission of the crime[,]” an act specifically. identified in Section 5.01 as conduct that may be held to be a substantial step. Finally, I would have little trouble affirming a finding that B.T.E.’s conduct is strongly corroborative of his frequently-stated intent to do J.R. harm. A map of a classroom with J.R.’s seat crossed out might only be more corroborative of criminal intent if B.T.E. had written “intended victim” with an arrow pointing to the seat.
Moreover, I consider B.T.E.’s preparation of his “death note” to be “strongly corroborative of the firmness of [his] criminal intent.” Zickefoose, 270 Ind. at 622-23, 388 N.E.2d at 510. The death note, admitted as State’s Exhibit 3, is a handwritten letter to M.V. found in the search of B.T.E.’s home. In the death note, B.T.E. begins, “[i]f you are reading this then I have gone. Either by running away, or by death. I have written you this death note in case, of this (you should already know).” State’s lEx. 3. B.T.E. continues, listing several persons and what he thought of them “so [M.V. could] tell them how I felt[.]” State’s Ex. 3. With the death note, B.T.E. seems to be attempting to “put his affairs in order” in the event of his death, a not-at-all-unlikely outcome if he attacked or killed J.R. using a firearm in Seymour High School. I consider B.T.E.’s death note to be strongly corroborative of the firmness of his intent to attack J.R. in school. I would affirm the juvenile court’s conclusion that B.T.E. committed what would be Level 3 attempted aggravated battery if committed by an adult.
I acknowledge that this court,: based on what are arguably stronger facts, has reversed attempt convictions in Collier and Calvert and has affirmed the dismissal of charges in State v. Kemp, 753 N.E.2d 47 (Ind. Ct. App. 2001), trans. denied. The facts of Collier and Calvert have been thoroughly discussed.by the majority, so I will not repeat them. In Kemp, the defendant arranged over the internet to meet with a person he believed was an underage girl for sex. Id. at 48. Kemp drove to the agreed-upon meeting place, where he was arrested by the detective who had been posing as an underage girl. Id. A grocery bag containing a package of condoms was found in Kemp’s vehicle. Id. The trial court dismissed attempted child molesting charges against Kemp, concluding that his actions amounted only to preparation or planning. Id. at 51.
 Had I been on any—or all—of the panels that decided these cases, I would have dissented as I do here. All three cases involved at least one of the circum *285 stances specifically mentioned in Section 5.01 that “shall not be held insufficient as a matter of law”: in Collier, the defendant followed the intended victim to work, laid in wait, and possessed material to be used to commit the crime; in Calvert, the defendant was in a vehicle near a liquor store that contained a sawed-off shotgun, multiple BB pistols, three pairs of sunglasses, and ski masks; and in Kemp, the alleged perpetrator was apprehended at the predetermined rendezvous with condoms. As for whether these acts were “substantial steps” or were “strongly corroborative” of criminal intent, I would have left that to the fact-finder.
I therefore concur in part and dissent in part.